## WILLIAM MATTHEWS *versus* LEVI BLISS *et al.*

Where the tenants in common of a vessel are not engaged jointly in purchasing or building ships for sale, they do not stand in such a relation of mutual trust and confidence towards each other in respect of the sale of such vessel, that each is bound, in his dealings with the other, to communicate information of all the facts within his knowledge, which may affect the price or value, but they may deal with each other as if they were owners of separate property.

Thus, a tenant in common of a vessel, in contracting with his co-tenant for the purchase of his share, at a certain price, is under no legal obligation to disclose that a third person had previously agreed with him to purchase the whole of the vessel at a higher rate.

But if there be any studied efforts on the part of such tenant in common to prevent his cotenant from coming to the knowledge of the truth, or if there be any, though slight, false and fraudulent suggestion or representation, then the transaction is void.

In order to avoid a sale under such circumstances, it is not necessary that the false representation should be the *predominant* motive inducing the sale, but it is sufficient if it was a motive at all inducing to the sale.

Where B, a tenant in common of a vessel, after a third person had agreed to buy the whole of the vessel of him at a certain price, purchased the share of M, his co-tenant, at a less rate, and an action was thereupon brought by M to recover damages of B, on the ground, that he had made fraudulent representations in purchasing M's share, it was *held*, that evidence tending to prove, that the sum paid to M was the full value of his share of the vessel, was admissible for the purpose of disproving the fraud charged upon B, and that it was proper for the consideration of the jury on the question of damages ; but that the price at which B had agreed to sell the vessel was strong, although not conclusive evidence of the value.

THIS was an action on the case, in which the plaintiff alleged, that in December, 1836, he was the owner of one quarter part of the brig Criterion then lying in the harbour of Boston ; that he had given to one Chapin, a power in writing, authorizing him to sell such share of the vessel for a fair price ; that Bliss and Shelton, two of the defendants, each being the owner of one eighth part of the vessel, and Lucas, the other defendant, who was master of her, fraudulently conspired to obtain from the plaintiff his share of the vessel, for a sum less than its true value ; that having first agreed with John N. Farwell and George Hancock, to sell them the whole of the vessel for the sum of $7250, they persuaded and induced Chapin to convey the plaintiff's share to Bliss for the sum of $1300, a sum much less than the true value thereof, and much less than a quarter of the price for which the whole vessel had been sold to Farwell and Hancock, by falsely and fraudulently rep-

resenting to Chapin, that the interest of the plaintiff would be attached by his creditors ; and that the defendants fraudulently concealed from the plaintiff and from Chapin the previous agreement with Farwell and Hancock.

At the trial, before *Dewey* J., the plaintiff introduced testimony tending to show, that the defendants had made the fraudulent representations set forth in the declaration, and that in consequence thereof Chapin had conveyed the plaintiff's share of the brig to Bliss for less than its real value, the plaintiff being, during the negotiation, at his place of residence in Maine ; and that the defendants concealed the previous agreement made with Farwell and Hancock.

The defendants offered evidence tending to prove, that the sum of $ 1300, which was paid to the plaintiff, was the true and full value of the plaintiff's quarter part, for the purpose of disproving the fraud charged upon them, and also as being evidence proper for the consideration of the jury on the question of damages. The plaintiff objected to the admission of this evidence, and contended, that if the defendants had by fraud deprived him of his share of the vessel, they were bound to pay him at the rate at which they had sold the whole vessel. But the evidence was admitted.

The judge instructed the jury, that in order to maintain this action, they must be satisfied, that the defendants had made the false representation set forth in the declaration, and that the sale was effected by means of such representation ; that it was not necessary that it should be the sole and only motive inducing the sale, but it must have been a predominant one ; that if the jury should be of opinion, that the plaintiff had failed to substantiate his allegations of false representations and pretences, then the mere non-disclosure by the defendants, of the bargain made by them with Farwell and Hancock, to the agent of the plaintiff, when negotiating for the purchase of the plaintiff's share, did not, of itself, furnish a substantive cause of action, the defendants being under no legal obligation to communicate those facts ; that the withholding the knowledge of them from the plaintiff and his agent, was not such a fraudulent concealment of the truth as would, of itself, entitle the plaintiff to maintain this action ; that the plaintiff, in order to maintain his

Matthews
*v.*
Bliss.

action, must show, that he had been induced to part with his share of the brig at a price less than its real value, by means of such false representations; that in estimating the real value of the plaintiff's share in the brig, the price at which she was sold to Farwell and Hancock was strong evidence to be considered by the jury, but was not conclusive evidence; and that the jury would consider this, with all the other evidence, in the case, as to the value of the brig, in forming an opinion on that point.

The jury returned a verdict for the defendants.

If the Court should be of opinion, that the ruling of the judge, or his instructions to the jury, were wrong, then the verdict was to be set aside and a new trial granted; otherwise judgment was to be rendered on the verdict.

*March 16th.*　　H. H. *Fuller* and F. *Smith*, for the plaintiff. The defendants were bound to inform the plaintiff of the bargain made with Farwell and Hancock. It is true, that good faith between a vendor and vendee does not require the disclosure of extrinsic facts, as for instance, the purpose for which the vendee wants the article; but any thing which he has discovered, which would, in every one's view, affect the value of the property sold, should be disclosed. In the present case it is self-evident that Chapin would not have sold the plaintiff's share of the vessel for the sum of $ 1300, if he had known of the agreement made with Farwell and Hancock. *Laidlaw* v. *Organ*, 2 Wheat. 178; 1 Story on Eq. Jurispr. § 205, cites *Turner* v. *Harvey*, Jac. 178; *Lewis* v. *Gamage*, 1 Pick. 347; *Mead* v. *Webb*, 1 Bro. P. C. 308; *Waldron* v. *Stevens*, 12 Wendell, 100; *Stevens* v. *Adamson*, 2 Stark. R. 422; *Mellish* v. *Motteux*, Peake's R. 115; *Arnot* v. *Biscoe*, 1 Ves. sen. 95; *Schneider* v. *Heath*, 3 Campb. 506; *Kennedy* v. *Johnson*, 2 Bibb, 12; *Bowman* v. *Bates*, 2 Bibb, 47. 52.

If the fraudulent representation was one of the motives inducing the sale on the part of the plaintiff, it is sufficient for the purposes of this action. *People* v. *Haynes*, 11 Wendell, 557, 566; *People* v. *Herrick*, 13 Wendell, 87, 89.

The parties to this transaction were not mere strangers, but those who were part owners stood in a fiduciary relation to each

other ; and therefore the utmost degree of good faith was to be observed between them. 1 Story on Eq. §§ 218, 466 ; 2 Kent's Com. (3d ed.) 483, cites *Smith v. Bank of Scotland*, 1 Dow's P. C. 272 ; 2 Story on Eq. § 1242.

The jury were instructed to the effect, that even if false representations had been made, the plaintiff was entitled to recover only the sum of $ 1300, if they should be of opinion that this was the true value. We contend that this instruction was erroneous, and that the price agreed on between the defendants and Farwell and Hancock, should be deemed the true value of the vessel, as regards the plaintiff. *Baker v. Wheeler*, 8 Wendell, 505 ; *Blasdale v. Babcock*, 1 Johns. R. 517 ; *Bracket v. M'Nair*, 14 Johns. R. 170 ; *Shepherd v. Johnson*, 2 East, 211 ; *Cortelyou v. Lansing*, 2 Caines's Cas. 215 ; *Lewis v. Peake*, 7 Taunt. 153 ; *Taylor v. Morgan*, 3 Watts, 333 ; *Harger v. M'Mains*, 4 Watts, 418 ; *West v. Wentworth*, 3 Cowen, 82 ; *Clark v. Pinney*, 7 Cowen, 681 ; *Clark v. Miller*, 4 Wendell, 628.

*Choate, Simmons* and *Gay*, for the defendants. The mere non-disclosure of the agreement to sell is not a sufficient ground to sustain this action. If the parties had been strangers, it is clear that the defendants would have been under no legal obligation to disclose that fact. 1 Story's Eq. §§ 204 *et seq.* ; *Fox v. Mackreth*, 2 Bro. C. C. 400, 420 ; *Turner v. Harvey*, Jacob's Ch. R. 178 ; Chitty on Contr. 137, cites *Pickering v. Dowson*, 4 Taunt. 785. But the plaintiff places his case on the ground of a fiduciary relation between the parties. The question then is, whether the defendants were the agents of the plaintiff, to sell the vessel. If they were, they were bound to disclose the agreement with Farwell and Hancock ; but if they were not so, they were under no obligation to disclose it. One tenant in common of a vessel does not become an agent to sell for the other, by virtue of that relationship. There is no fiduciary relation between them ; they do not contract with each other like partners, each of whom is bound to advance the benefit of all. *Flagg v. Mann*, 2 Sumner, 486 ; *Vernon v. Keyes*, 12 East, 631. Besides, the plaintiff had employed Chapin as his agent to sell ; and this negatives any implied agency on the part of the defendants.

*Matthews*
*v.*
*Bliss.*

In regard to the value of the vessel, we maintain that the instruction was correct. The plaintiff is entitled to the true value of his share of the vessel ; but he has no right to any advantages growing out of the bargain with Farwell and Hancock. *Lamb* v. *Stone,* 11 Pick. 534 ; *Vernon* v. *Keyes,* 12 East, 636.

*April* 1st.

SHAW C. J. delivered the opinion of the Court. Most of the principles and rules applicable to the case of procuring money on goods by false and fraudulent pretences, and of avoiding and vacating contracts obtained by false representations, are applicable to this case. The gist of the action was the conspiracy of the three defendants, after having agreed upon a sale of the brig at a large price, to induce the plaintiff's agent, by a concealment of the fact that the vessel could be sold for such price, and by false and fraudulent representations, to sell the plaintiff's quarter part of the vessel, at a price much below that which they had so agreed to sell for. The Court are of opinion, that the direction of the judge who tried the cause, was correct in stating to the jury, that the mere non-disclosure of the fact, within their own knowledge, that they could sell and had agreed to sell the brig for a higher price, would not be sufficient to support the action, and that they were under no legal obligation to disclose that fact, and that withholding it was not such a fraudulent concealment of the truth, as would of itself maintain the action. The Court are of opinion, that the tenants in common of a vessel, who are not engaged jointly in the employment of purchasing or building ships for sale, do not stand in such a relation of mutual trust and confidence towards each other, in respect of the sale of such vessel, that each is bound, in his dealings with the other, to communicate all the information of facts within his knowledge, which may affect the price or value. A different rule may prevail, in respect to any contract for the use or employment of the common property, in which relation perhaps they may be deemed to place confidence mutually in each other. But as in common cases of tenants in common of a vessel, they are independent of each other in all matters of purchase and sale, and may deal with each other in the same manner as owners of separate property. Each may act upon the knowledge which he has, without com-

municating it. But *aliud est tacere, aliud celare.* With this advantageous knowledge, if there be studied efforts to prevent the other from coming to the knowledge of the truth, or if there be any, though slight, false and fraudulent suggestion or representation, then the transaction is tainted with turpitude, and alike contrary to the rules of morality and of law. The direction therefore was correct, in stating, that the plaintiff must show, that he had been induced to part with his one fourth of the brig, at a price less than its real value, by means of the alleged false representations and pretences.

The judge further instructed the jury, that in order to maintain this action, they must be satisfied that the defendants had made the false representation and that the sale was produced by means of it ; that it was not necessary that it should be the sole and only motive inducing the sale, but it must have been a predominant one. In this particular, the Court are of opinion, that the direction, as it may have been and probably was understood by the jury, was not strictly correct ; though it may have been so qualified and illustrated as to prevent the jury from being misled by it.

The term " predominant," in its natural and ordinary signification, is understood to be something *greater* or superior in power and influence to others, with which it is connected or compared. So understood, a predominant motive, when several motives may have operated, is one of greater force and effect, in producing the given result, than any other motive. But the Court are of opinion, that if the false and fraudulent representation was a motive at all, inducing to the act, if it was one of several motives, acting together, and by their combined force, producing the result, it should have been left to the jury so to find it. If the false suggestion had no influence, if the plaintiff's agent would have done the same thing and made the sale, if such representation had not been made, then it was not a motive to the act, and the plaintiff's agent was not induced to sell by means of it. On the whole, considering that the ordinary and natural meaning of the term " predominant," when applied to one among several motives, is such as has been stated, that the jury may have so understood it, and if

they did so understand it, they may have come to a verdict, not warranted by law, upon the evidence before them, the Court are of opinion, that the verdict ought to be set aside, and a new trial granted.

One question arose at the trial, and has been considered at the bar, upon which it may be convenient to have the opinion of the Court, in case of a new trial.

The defendants, for the purpose of disproving the fraud charged upon them, and also as proper for the consideration of the jury on the question of damages, if they should find for the plaintiff, offered evidence tending to prove that the sum of thirteen hundred dollars, which was paid by them to the plaintiff, was the true and full value of the plaintiff's quarter of the brig. The plaintiff objected to the admission of this evidence, insisting, that if the defendants had by fraud deprived him of his quarter of the brig, they were bound to pay him at the rate at which they had sold her. The Court are of opinion, that the evidence is competent upon both points. It may bear upon the question of fraudulent representation and fraudulent intent, though perhaps slightly and remotely. It may have a tendency to show, that at all events, the plaintiff or his agent would have sold her at the price offered, and thus tend to disprove the fact of fraudulent representation. So, upon the question of damages, the actual price, at which the defendants sold the vessel, especially if they received the money, would be by far the most satisfactory evidence of value, and that which the jury would probably adopt, but not conclusive. It may be, that the price named was a barter price, or that the sale was made on bad security, and the money never realized, or that something besides the mere money value of the vessel, entered into the contract of sale. If there were no such circumstances, the price which the defendants actually obtained, would seem to be the proper measure of damages, not only because it would be unjust to permit a fraudulent party to retain the fruits of his fraud, but because, if the plaintiff's agent had not been induced to sell to the defendants at the under price, those who stood ready to purchase, would have come to him and offered the larger price, which they were ready to give to the defend-

ants. The jury were instructed that the price, at which the defendants sold, was strong evidence of the value, but not conclusive, and in this direction the Court concur.