WILLIAM A. BRALEY *vs.* ROBERT E. POWERS.

Androscoggin.　Opinion December 1, 1898.

| 92 | 203 |
| 94 | 38 |
| 92 | 203 |
| 103 | 460 |
| 92 | 203 |
| f102 | 203 |
| f102 | 359 |

*Deceit.　Sales.　False Representations by Vendor.　Exceptions.*

In an action for fraudulent representations in the sale of letters patent for the manufacture of harness buckles, positive statements made by the defendant as of his own knowledge in relation to the cost of manufacturing the buckles, are material as directly affecting the value of the right to manufacture them.

Where the buckle is a novel, mechanical contrivance or device and has no established market price, *held;* that the jury would not be authorized to find that the plaintiff is chargeable with a want of ordinary care and vigilance in relying upon the defendant's statement of their cost.

It is not error to refuse to give an instruction which, though correct as an abstract principle, is not called for by the facts in evidence.

Exceptions will not be sustained for admitting testimony although not legally admissible as to statements made out of court by buckle-makers concerning the cost of manufacturing buckles when it tends to corroborate the defendant's own testimony in court, and he is not prejudiced by its introduction.

In actions of deceit the falsity and fraud on the part of the defendant consist in stating that he knows the facts to be true of his own knowledge when he has not such knowledge; and he may be liable although he believed and had reasonable cause to believe his representations to be true.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

An action on the case for deceit, in the sale of an interest in a patent right, a verdict for $500 being rendered for the plaintiff.

This case is stated in the opinion of the court.

*W. H. Newell and W. B. Skelton,* for plaintiff.

*J. P. Swasey and E. M. Briggs,* for defendant.

The law requires a purchaser to use some care, to apply some intelligence, and to exercise some diligence, before he can receive protection from even false and material statements by which a vendor has deceived him to his damage.

In *Pratt* v. *Philbrook*, 33 Maine, 23, the court says: "And if a party is imposed upon by the fraud of the other, where the former had the full means of detecting the fraud and ascertaining the truth, and neglected to inform himself of it, when he might

easily have done so, courts have not interposed in behalf of the injured party." This is the instruction asked and refused.

And later, in *Palmer* v. *Bell*, 85 Maine, 355, the court goes even further and says: "Even in cases where the misrepresentations are in reference to material facts affecting the value of the property, and not merely expressions of opinion or judgment, the law holds that the person to whom such representations are made has no right to rely upon them, if the facts are within his observation, or if he has equal means of knowing the truth, or by the use of reasonable diligence might have ascertained it, and is not induced to forego further inquiry which he otherwise would have made." *Salem India Rubber Co.* v. *Adams*, 23 Pick. 256; *Nowlan* v. *Cain*, 79 Cal. 234; *Deming* v. *Darling*, 148 Mass. 504; *Edes* v. *Hamilton Mut. Ins. Co.*, 3 Allen, 363; *Farr* v. *Peterson*, 91 Wis. 182.

The court has held that whether or not there was such negligence on the part of the purchaser as to relieve the seller from liability in such cases is a question for the jury. *Brown* v. *Leach*, 107 Mass. 364; *Savage* v. *Stevens*, 126 Mass. 207; *Sharp* v. *Ponce*, 74 Maine, 470; *Trull* v. *True*, 33 Maine, 367; *Nickerson* v. *Gould*, 82 Maine, 512.

"The law does not go to the romantic length of giving indemnity against the consequences of indolence and folly or careless indifference to the ordinary and accessible means of information." 2 Kent's Com. 485. Whether these words are actionable or not becomes of little consequence in light of the plaintiff's testimony as to what deceived him. He says he was induced to buy by Powers' opinion as to what could be made out of the buckle.

SITTING:   PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

WHITEHOUSE, J. This was an action to recover damages for fraudulent representations in the sale of an interest in letters patent for the manufacture of harness buckles. The false representation set out in the plaintiff's writ and relied upon at the trial, was that the defendant "had a quantity of said buckles on hand, consisting

of two sizes, which cost him thirty and thirty-five cents per dozen respectively, samples of which said buckles he then and there exhibited to the plaintiff, and then and there affirmed that he could get all the buckles which they desired to sell at said prices, respectively, and then and there affirmed that said buckles could then and there be sold at sixty-five and seventy-five cents per dozen respectively, and then and there double the cost."

The plaintiff paid the defendant $800 for one third interest in the patent and recovered a verdict for $500. The case comes to this court on exceptions to the rulings of the presiding justice and and also on a motion to set aside the verdict as against evidence.

I.   Evidence was admitted under objection, to prove the allegation above set forth, but the court was requested to instruct the jury that this representation by the defendant concerning the cost of the buckles, was not a statement of a material fact, and if false, was not actionable.   The defendant excepted to the refusal of the presiding judge to give this instruction.

It is undoubtedly a reasonable rule of the common law, uniformly recognized in this state, that representations of the value of real or personal property which is itself the subject matter of bargain and sale, or of the price paid or offered for it in a particular instance, are so manifestly statements of opinion on the part of the seller, or mere evidence of the opinion of others respecting its value, that they cannot be. deemed statements of material facts which will lay the foundation of an action for deceit, even if the statements are false and intended to deceive.   *Bishop* v. *Small*, 63 Maine, 12 ; *Rhoda* v. *Annis*, 75 Maine, 17 ; *Bourn* v. *Davis*, 76 Maine, 223 ; *Palmer* v. *Bell*, 85 Maine, 352.

But even in this class of cases when the statements relate directly to the subject matter of the sale, it was held in *Manning* v. *Albee*, 11 Allen, 520, that false representations that certain railroad bonds were selling in the market at a given price entitled the plaintiff to maintain an· action, there being no evidence that the plaintiff had equal means of knowing the truth or untruth of the statements, or that he might not rely upon them without the

imputation of negligence.　See also *Com.* v. *Wood*, 142 Mass. 460.

In *Coolidge* v. *Goddard*, 77 Maine, 578, it was held, that a false representation by the defendant in effecting the sale of shares in an electric light company, that he and all other stockholders had paid to the company the par value of the stock, constituted a legal fraud, as it affected directly the value of the stock.

In *Hoxie* v. *Small*, 86 Maine, 23, the seller of shares in a contract for the purchase of real estate, made false representations in regard to the amount paid for them to the owner of the land and the court held them actionable, saying:　"They affected directly the value of the interest which the defendant was selling.　The defendant was not selling tangible property.　He was selling a fractional interest in a contract.　And the value of that contract depended largely if not wholly upon the amount of payments that had been made upon it."

So in the principal case the defendant was not selling "tangible property," but an interest in a patent right for the manufacture of buckles.　The value of the invention obviously depended upon the margin of profit between the cost of manufacturing the buckles and their selling price.　Statements in regard to their cost were therefore material as directly affecting the value of the right to manufacture them.　The representations immediately following, that he could furnish all the buckles they wanted at the price named by him at the cost of those exhibited and that they could be sold so as to double the cost, were not in themselves statements of existent facts, but were mere predictions and expressions of opinion.　They served, however, to give significance and force to his positive statement of the cost of those exhibited.　Considered in connection with these accompanying expressions of opinion, the representation, that the buckles shown to the plaintiff were manufactured for thirty and thirty-five cents per dozen respectively, were well calculated to convey to the mind of the plaintiff the idea that those buckles were manufactured at that cost under ordinary conditions, and not under exceptionally favorable circumstances.

The defendant also excepted to the refusal of the presiding justice to give the jury the following instruction, viz:　"If a party is

imposed upon by the fraud of another, when the former had full means of detecting the fraud and ascertaining the truth of the matter and neglected to inform himself of it, when he might easily have done so, the law will not interfere to give relief."

With the exception of the last clause, the language of this request was taken from the opinion in *Pratt* v. *Philbrook*, 33 Maine, 23. It was there employed by the court in giving reasons for sustaining a demurrer to the declaration, in which it appeared that the written contract with respect to which the false representations were made, was readily accessible to the plaintiffs before the trade was completed, and one of the transactions involved was ratified by them after full knowledge of the facts. The language was appropriate for that purpose, but as an instruction to the jury, it would fail to explain with sufficient fullness and clearness the duty that might rest upon the plaintiffs to exercise reasonable and ordinary care, diligence and prudence to ascertain the truth or untruth of the defendant's representations. But a careful examination of the evidence in the principal case leads to the conclusion that the jury would not have been authorized to find that the plaintiff had equal means of knowing the truth or was chargeable with a want of ordinary care and vigilance in relying upon the defendant's statement of the cost of the buckles. If correct as a general principle, the requested instruction was not called for as applicable to the facts in evidence. The buckle was a novel mechanical contrivance or device, and had no established market price. The plaintiff was not an expert in such matters and had no personal knowledge of its cost. The defendant had already caused a quantity to be manufactured and had definite knowledge of the cost. The defendant's statement to the plaintiff was deliberate and positive and made as of his own knowledge, derived from actual investigation and experience. There was nothing in it so improbable or unreasonable as to put the plaintiff upon further inquiry. He had no reason to suspect that the statement was false and made for the purpose of cheating and defrauding him. He testified that he relied upon it as an inducement to the purchase, and it is the opinion of the court that he was justified in so doing. The request was properly refused.

The defendant further excepted to the admission of the testimony of Frank M. Braley, that buckle makers in Portland and Boston informed him that they could not make these buckles of the larger size, less than one dollar per dozen. This was clearly hearsay evidence and not legally admissible. The buckle makers themselves should have been produced in court, that they might be subjected to cross-examination. But it is equally clear that the defendant was not prejudiced by the introduction of this evidence; for he expressly admits in his testimony, that the buckles exhibited to the plaintiff cost 87 1-2 cents and one dollar per dozen, for the two sizes respectively, and it does not appear that he had ever known buckles of that quality to be actually manufactured at a less price. But he insisted, in his defense, that he so told the plaintiff during the negotiations for the sale of the patent. He testified that he distinctly informed the plaintiff before the sale, that the buckles cost 87 1-2 cents and one dollar per dozen. The plaintiff emphatically denied it, and insisted that the defendant told him that they cost only thirty and thirty-five cents per dozen respectively. This was the principal issue of fact submitted to the jury. It is manifest, therefore, that the plaintiff was not injured by testimony which only tended to corroborate his own admissions. It is not the duty of appellate courts to set aside the reasonable verdict of a jury upon exceptions to the admission of evidence that may be technically inadmissible under the established rules, when it clearly and satisfactorily appears that the excepting party was not aggrieved by the evidence and no injustice was thereby done.

It is the right and duty of the court under such circumstances to give heed to the general merits and substantial justice of the cause. *Fogg* v. *Babcock*, 41 Maine, 347; *Brooks* v. *Goss*, 61 Maine, 307; *Millett* v. *Marston*, 62 Maine, 477; *Barrett* v. *Bangor*, 70 Maine, 335; *Howard* v. *Patterson*, 72 Maine, 57; *Hall* v. *Otis*, 77 Maine, 122; *Powers* v. *Mitchell*, 77 Maine, 361.

Finally the defendant has exceptions to the exclusion of a letter offered by him in rebuttal, purporting to have been written by a manufacturer in Chicago, in reply to the defendant's inquiry two months after the commencement of this action, containing a pro-

posal to make similar buckles at much less than the cost of those exhibited to the plaintiff. But the defendant had been allowed to testify to what he called the "contract price" of another buckle exhibited by him to the jury and it sufficiently appears from the evidence reported, that this statement was based on the proposal in the Chicago letter, for the descriptions and prices of the buckles contained in the letter are practically identical with those given in the defendant's testimony. The letter was not in rebuttal of any evidence subsequently introduced by the plaintiff, and does not appear to have been legal evidence at any stage of the trial.

II. The motion to set aside the verdict must also be overruled. The plaintiff assumed the burden of proving by a preponderance of evidence that the defendant made a positive statement as of his own knowledge, in relation to a material fact, past or existent, directly affecting the value of the patent right as an inducement for the plaintiff to purchase an interest in it; that the plaintiff was justified, under all the circumstances in relying upon it, and that he did rely upon it as one of the material influences by which he was induced to make the purchase; and that such statement by the defendant was false and known by him to be false, or not known to be true. Such a statement is characterized in law as a fraudulent representation, and is uniformly recognized as a sufficient basis for an action of deceit. The cause of action is classified among the wrongs inflicted by one person upon another by means of deception, and in contemplation of law an intention to deceive is always involved; but a fraudulent purpose may be inferred from a wilfully false statement in relation to a material fact. And, as before intimated, it is not always necessary to prove that the defendant knew that the facts stated by him were false. "If he states as of his own knowledge material facts susceptible of knowledge, which are false, it is a fraud which renders him liable to the party who relies and acts upon the statement as true, and it is no defense, that he believed the facts to be true. The falsity and fraud consist in representing that he knows the facts to be true of his own knowledge, when he has not such knowledge."

*Litchfield* v. *Hutchinson,* 117 Mass. 195. And in *Cole* v. *Cassidy,* 138 Mass. 285; it was held that under such circumstances, the defendant would be liable, although he believed and had reasonable cause to believe his representations to be true. See also *Chatham Furnace Co.* v. *Moffatt,* 147 Mass. 403; *Milliken* v. *Thorndike,* 103 Mass. 382; *Wheelden* v. *Lowell,* 50 Maine, 499.

It was not necessary that the defendant's false representation should have been the sole, or even the principal inducement for the plaintiff to enter into the contract. If it exerted a material influence upon his mind, although it was only one of several motives acting together, which produced the result, it would be sufficient to render the defendant liable. *Matthews* v. *Bliss,* 22 Pick. 48; *Safford* v. *Grout,* 120 Mass. 20.

It is the opinion of the court that, upon the principles above stated, there was not only sufficient evidence in the case to sustain the verdict rendered by the jury, but that a careful analysis of the facts reported shows that a fair preponderance of all the evidence supports the propositions which it was incumbent upon the plaintiff to establish. Nor do the facts warrant the intervention of the court to set aside the verdict on the ground that the damages are excessive.

*Motion and exceptions overruled.*